1
2
3
4
5
6                    **IN THE UNITED STATES DISTRICT COURT**
7                        **FOR THE DISTRICT OF ARIZONA**
8

9    United States of America,                   No. CR-15-1325-TUC-CKJ (DTF)

10                       Plaintiff,              **REPORT AND**
                                                 **RECOMMENDATION**
11   v.

12   Francisco Javier Liquidano,

13                       Defendant.

14

15          Pending before the Court are Defendant's Motion to Suppress (Doc. 20), Motion

16   to Dismiss (Doc. 29) and Motion to Disclose Agents' Personnel File (Doc. 21). The

17   government filed a response to each motion. (Docs. 24, 25, 39.)

18          These matters came before Magistrate Judge Ferraro for a report and

19   recommendation as a result of a referral, pursuant to LRCrim 5.1. Evidence was heard on

20   December 9 and 21, 2015. (Docs. 32, 39.) The Court allowed supplemental briefing up to

21   January 4, 2016. The defense filed a supplemental memorandum (Doc. 43), the

22   government did not. The Magistrate Judge recommends that the District Court, after its

23   independent review, deny Defendant's motions.

24                              **I. FACTUAL BACKGROUND**

25          On June 25, 2015, Border Patrol Agents operating cameras along the international

26   border in Nogales, Arizona, noticed individuals in Mexico setting up a launching device.

27   (RT at 127-30.)[1]   Similar launchers had been used previously to throw packages

28   _____

           [1]      "RT" refers to the Reporter's Transcript of the December 9, 2015

1    containing controlled substances over the border fence into the United States. (RT at 8-

2    10, 22.) Agent Rodriguez, a camera operator, subsequently notified field agents that a

3    bundle had been launched from Mexico into the United States. (RT at 12-14, 77-78.)

4    Agent Rodriguez also provided the field agents with the suspected landing location of the

5    bundle and information that an individual was seen carrying a bundle in the area where

6    he believed the projectile had landed. (RT at 12-14, 19, 78, 113, 133.)

7         Border Patrol Agents Connors and Price responded to the part of Escalada Street

8    where the camera operator had directed them. (RT at 13-14, 20, 79-80.) As Agent

9    Connors proceeded down the street on foot, Agent Rodriguez informed him which

10   driveway the suspect had entered and Agent Connors walked up the same driveway. (RT

11   at 14, 15.) According to Agent Connors, the first thing he saw was a cylindrical bundle

12   wrapped in tape on the ground and, approximately 15-20 feet away, he saw Defendant

13   knocking on the front door of a house. (RT at 15, 17, 42, 80.) The agents did not see

14   anyone else on the street at that time. (RT at 14, 18, 83.) Agent Connor directed

15   Defendant to come to him so he could speak with Defendant. (RT at 17.)

16        At about this time, Agent Price arrived and assisted Agent Connor. (RT at 17, 80.)

17   During Defendant's questioning, Defendant claimed he was visiting his grandmother.

18   (RT at 83, 111.) Shortly thereafter, a vehicle arrived and the agents recognized it as one

19   that was usually parked at the residence. (RT at 64-65.) When the agents questioned the

20   driver of the car, he claimed to live in the residence and denied knowing Defendant. (RT

21   at 65, 69-70.)

22        While Defendant was detained for questioning, Agents Connors and Price were in

23   contact with Agent Rodriguez. (RT at 18, 20, 83-84.) After Agent Rodriguez, and

24   supervising agent Ortiz, confirmed Defendant's clothing matched the description of the

25   individual seen carrying the bundle (red shirt, dark pants, and white shoes), Defendant

26

27   _____

28   evidentiary hearing. (Doc. 42.)

1    was arrested. (RT at 20, 83-84, 116, 132.) The bundle was opened at the Border Patrol

2    station and was confirmed to be marijuana. (RT at 116-18.)

3        Defendant is charged in a two-count indictment of conspiracy to possess with

4    intent to distribute less than 50 kilograms of marijuana (Count 1) and possession of less

5    than 50 kilograms of marijuana with intent to distribute (Count 2).  (Doc. 10.)

## II. DISCUSSION

### A. Defendant's Motion to Suppress

8        Initially, Defendant argues that Border Patrol Agents violated his Fourth

9    Amendment rights by approaching him within the curtilage of the property while he was

10   knocking on the front door. Specifically, that the agents were prohibited from entering

11   the curtilage to question Defendant and any evidence so derived should be suppressed. A

12   person cannot challenge a search unless he has legitimate expectation of privacy in the

13   area searched. *Rakas v. Illinois*, 439 U.S. 123, 143 (1978). A defendant has the burden of

14   proving that "he personally has an expectation of privacy in the place searched, and that

15   his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88 (1994). In other

16   words, a defendant has the burden of proving standing. *See Rawling v Kentucky*, 448 U.S.

17   98, 104 (1980); *United States v. Singleton*, 987 F.2d 1444, 1449 (9th Cir. 1993); *United

18   States v. Caymen*, 404 F.3d 1196, 1199 (9th Cir. 2005). Defendant presented no evidence

19   that he had a legitimate expectation of privacy in the curtilage of this residence.

20       Defendant also argues the agents lacked reasonable suspicion to stop him for

21   questioning. "Law enforcement officers do not violate the Fourth Amendment's

22   prohibition of unreasonable seizures merely by approaching individuals on the street or in

23   other public places and putting questions to them if they are willing to listen." *United

24   States v. Drayton*, 536 U.S. 194, 200 (2002). Here, Defendant was on foot, knocking on

25   the front door of a home. The agents initiated the conversation with Defendant when he

26   was in a public place, which did not violate his rights.

27       Further, the agents' stop of Defendant was reasonable under the totality of

28   circumstances known to the agents. The agents must "point to specific and articulable

1   facts which, taken together with rational inferences from those facts, reasonably warrant

2   th[e] intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). The agents had received

3   information from a fellow officer that he had seen a package launched from Mexico over

4   the border fence. They were aware of previous instances where these packages had been

5   found to contain controlled substances. Within minutes of the launch, Agent Rodriguez

6   relayed information that an individual carrying a package had entered the driveway of a

7   home. (RT at 133.) Upon reaching that driveway, the agents found a cylindrical package

8   within 20 feet of where they first had contact with Defendant. The agents did not see any

9   other people in the area where the package had landed. The detention prior to arrest lasted

10  approximately 15 minutes. (RT at 61.) In sum, the agents had reasonable suspicion to

11  detain Defendant.

12         Defendant argues next that his arrest was not supported by probable cause. The

13  Court disagrees. "Probable cause to arrest exists when officers have knowledge or

14  reasonably trustworthy information sufficient to lead a person of reasonable caution to

15  believe that an offense has been or is being committed by the person being arrested."

16  *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). The Court has viewed the

17  video surveillance upon which the agents relied and examined the exhibits submitted at

18  the hearing. (Doc. 41 & Ex. 220). Although the portion of the video depicting the

19  individual's clothing is extremely brief, if viewed frame by frame, a person carrying a

20  package can be seen wearing the same color shirt, pants and shoes as that worn by

21  Defendant when he was stopped. An earlier portion of video depicts individuals in

22  Mexico launching an object into the United States. (Ex. 220). Prior to Defendant's arrest,

23  the agents knew the information set forth above that the Court determined was sufficient

24  to establish reasonable suspicion. In addition, the agents learned that Defendant was

25  wearing the same color clothing as the individual Agent Rodriguez had seen carrying a

26  package in the target area, and Defendant's innocent explanation for his presence at the

27  location near the package of suspected marijuana was false. Given the totality of

28  circumstances, there was probable cause to arrest Defendant.

1      In Defendant's supplemental memorandum, he identifies a series of agent

2 observations and seized evidence that he asserts should be suppressed as the fruit of an

3 illegal arrest. The defense reasons that at the point he was placed in handcuffs he was

4 under arrest and, at that time, the agents lacked probable cause. The Court disagrees. The

5 use of handcuffs, "if reasonably necessary," does not automatically transform a detention

6 into an arrest. *See United States v. Taylor*, 716 F.2d 701, 709 (9th Cir. 1983). Agent Price

7 testified that he frisked Defendant and told him that he was going to be placed in

8 handcuffs and detained while he completed the investigation. (RT at 85.) Agent Price

9 further stated that he placed Defendant in handcuffs for his safety because "he was being

10 temporarily detained for possible narcotics smuggling." (RT at 85, 112.) Agent Price

11 testified that only after he had verified with the camera operator and his supervisor that

12 he had everything correct, including the clothing description, did he place Defendant

13 under arrest. (RT 83-84, 132.) Because the Court finds the arrest was supported by

14 probable cause, the Court does not reach the individual items Defendant seeks to

15 suppress.

16      **B. Defendant's Motion to Dismiss**

17      On June 25, 2015, a bundle containing marijuana, that weighed 7.55 pounds, was

18 seized and Defendant was arrested. Four months later, on October 27, 2015, Defendant

19 requested to re-weigh the marijuana and view the packaging. Prior to the defense request,

20 the bulk of the marijuana and packaging was destroyed. A core sample was saved and is

21 available to Defendant for retesting. The government did not provide the defense with

22 advance notice of its intent to destroy the marijuana. Defendant argues that the

23 destruction violated his right to due process and he moves to dismiss the indictment or,

24 alternatively, to suppress any evidence about the marijuana that was seized.

25      When the prosecution fails to disclose materially exculpatory evidence, it violates

26 due process. *Brady v. Maryland*, 373 U.S. 83 (1963). In contrast, when the prosecution

27 fails to preserve merely "potentially useful evidence," there is no due process violation

28

- 5 -

1    unless a defendant shows bad faith on the part of the government. *Arizona v. Youngblood*,

2    488 U.S. 51, 58 (1988).

3    Here, Defendant neither argued that the government acted with, nor did he offer

4    evidence of, bad faith. Therefore, he must establish the government withheld materially

5    exculpable evidence. Defendant argues the marijuana and packaging was material to

6    (1) challenging the agents' beliefs that drugs were contained within the package, and

7    (2) the applicable sentencing guidelines. First, Defendant possesses a photograph of the

8    package as it looked the night it was seized, which is sufficient to challenge the agents'

9    beliefs about the package's contents. Further, the Court has determined there was

10   probable cause for arrest based on the totality of the circumstances, including the agents'

11   description of the package and the corroborating photograph.

12   Second, the gravamen of the harm claimed by Defendant is that he now lacks the

13   ability to determine the actual amount of marijuana contained in the package. Because the

14   package was launched from Mexico onto the ground, the Court acknowledges it likely

15   contained considerably more packaging material than a typical bundle in order to avoid

16   exploding on impact. Although Defendant raises a valid point, it is a point to be

17   considered at sentencing, if Defendant is convicted. *See U.S. Sentencing Guidelines*

18   *Manual* § 2D1.1(c). At this time, that issue is not ripe for adjudication. Defendant

19   presented no evidence that his defense to the charges has been diminished by the

20   destruction of the bulk marijuana and packaging. The core sample is still available for

21   independent testing to confirm whether it is marijuana. In sum, Defendant did not prove

22   that the government failed to disclose exculpatory evidence.

23   Finally, Defendant argues the government's destruction of the evidence violated

24   an applicable regulation. Even if true, that regulation does not provide Defendant a

25   remedy. *See* 28 C.F.R. § 50.21. Accordingly, the Court finds the government did not

26   violate Defendant's rights by the destruction of the bulk marijuana and packaging.

27

28

**C. Defendant's Motion to Disclose Personnel File**.

Defendant moves the Court for an order compelling the government to disclose the personnel files of its Border Patrol witnesses and the existence of any internal affairs investigation of its witnesses. *Brady* material "encompasses impeachment evidence, and evidence that would impeach a central prosecution witness is indisputably favorable to the accused." *United States v. Price*, 566 F.3d 900, 907 (9th Cir. 2009). In response to Defendant's motion, the government acknowledged its duty under *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991), and stated that it has ordered a review of the agent's personnel files, and its counsel will turn over any information that is "favorable to the defendant and material to his case." The Court finds that the government is complying with its obligations and recommends this motion be denied without prejudice, in the event a dispute arises over the production of such material.

## III. RECOMMENDATION

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court DENY Defendant's Motion to Suppress (Doc. 20); DENY Defendant's Motion to Dismiss (Doc. 29); and DENY Defendant's Motion to Disclose Personnel File without prejudice (Doc. 21).

Pursuant to Federal Rule of Criminal Procedure 59(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of this Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived.

Dated this 14th day of January, 2016.

D. Thomas Ferraro
United States Magistrate Judge