# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-15-01325-001-TUC-CKJ |
| Plaintiff, | **ORDER** |
| v. | |
| Francisco Javier Liquidano, | |
| Defendant. | |

Defendant filed a Motion to Suppress (Doc. 20), Motion to Dismiss (Doc. 29) and Motion to Disclose Agents' Personnel File (Doc. 21). The government filed a response to each motion. (Docs. 24, 27, 30.) Defendant also filed a supplemental memorandum in support of the Motion to Suppress, to which the government did not respond. (Doc. 43). The matters were referred to Magistrate Judge D. Thomas Ferraro, who held evidentiary hearings on December 9 and 21, 2015. (Docs. 32, 39.)  On January 14, 2016, Magistrate Judge Ferraro issued a Report and Recommendation (R & R) recommending that the Motion to Suppress (Doc. 20) and Motion to Dismiss (Doc. 29) be denied and that the Motion to Disclose Agents' Personnel File (Doc. 21) be denied without prejudice.  (Doc. 44.)

Defendant filed objections to the R & R, and the Government responds briefly but relies on the R &.R.  (Docs. 52, 57.)

The Court has reviewed the motions, responses, transcripts of the hearings, hearing exhibits, the R & R, and the objections and response to the R & R.  The Court

overrules Defendant's objections, denies the Motions to Suppress/Dismiss (Docs. 20-29), denies without prejudice the Motion to Disclose Personnel Files (Doc. 30), and adopts the R & R with a modification.

### I.     Background

Defendant was arrested by Border Patrol agents on the evening of June 25, 2015, near the international border in Nogales, Arizona, and later indicted for conspiring to possess with intent to distribute less than 50 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). In his motions, Defendant asserts that he was detained by the agents without reasonable suspicion and arrested and searched without probable cause.  (Doc. 20.)  He further argues that the package containing marijuana was destroyed without notice, precluding re-weighing of the marijuana and violating his due process rights. (Doc. 29.) Finally, he seeks the disclosure of the Border Patrol Agents' personnel files.  (Doc. 21.)

### II.    Legal Standard

The Court reviews de novo the objected-to portions of the Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The Court reviews for clear error the unobjected-to portions of the Report and Recommendation.  *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *see also, Conley v. Crabtree*, 14 F.Supp.2d 1203, 1204 (D. Or. 1998).

### III.   Motion to Dismiss/Suppress (Detention and Arrest)

#### A.    R & R

The R & R found that on June 25, 2015, Border Patrol Agents operating cameras along the international border in Nogales, Arizona, noticed individuals in Mexico setting up a launching device, which was similar to launchers used previously to throw packages containing controlled substances.  Thereafter, Agent Rodriguez, a camera operator, notified field agents that a bundle had been launched from Mexico into the United States. (RT1 at 12-14, 77-78.)[1]   Agent Rodriguez also provided the field agents with the

---

[1] RT1 refers to the Report's Transcript of the Dec. 9, 2015 evidentiary hearing and

- 2 -

suspected landing location of the bundle and information that an individual was seen carrying a bundle in the area where he believed the projectile had landed. (RT1 at 12-14, 19, 78, 113, 133.)

Border Patrol Agents Connors and Price responded to the part of Escalada Street where Agent Rodriguez had directed them. (RT at 13-14, 20, 79-80.) As Agent Connors proceeded down the street on foot, Agent Rodriguez informed him which driveway the suspect had entered and Agent Connors walked up the same driveway. (RT1 at 14, 15.) According to Agent Connors, he saw a cylindrical bundle wrapped in tape on the ground and then, approximately 15-20 feet away, he saw Defendant knocking on the front door of a house. (RT1 at 15, 17, 42, 80.) The agents did not see anyone else on the street at that time. (RT1 at 14, 18, 83.) Agent Connor directed Defendant to come to him so he could speak with Defendant. (RT1 at 17.)

At about the same time, Agent Price arrived and assisted Agent Connor. (RT1 at 17, 80.) They questioned Defendant, who claimed he was visiting his grandmother. (RT1 at 83, 111.) Shortly thereafter, a vehicle pulled up and the agents recognized it as one that was usually parked at the residence. (RT1 at 64-65.) The agents questioned the driver of the car, who said he lived in the residence and who denied knowing Defendant. (RT1 at 65, 69-70.)

While Defendant was detained for questioning, Agents Connors and Price were in contact with Agent Rodriguez. (RT1 at 18, 20, 83-84.) Agent Rodriguez and Supervising Agent Ortiz confirmed that Defendant's clothing matched the description of the individual seen carrying the bundle (red shirt, dark pants, and white shoes). Defendant was then arrested and the bundle was opened at the Border Patrol station where it was confirmed to be marijuana.

The Magistrate Judge found no Fourth Amendment violation based on Defendant's alleged expectation of privacy as he stood within the curtilage of the property. The R & R finds that Defendant presented no evidence that he had a legitimate

---

RT2 refers to the Dec. 21, 2015 evidentiary hearing.

expectation of privacy in the curtilage of this residence.[2] (Doc. 44 at 3.) The R & R further finds that Defendant was on foot, knocking on the front door of a home, and that the agents initiated the conversation with Defendant when he was in a public place, which did not violate his rights.

As to Defendant's argument that the stop was a violation of his Fourth Amendment rights, the R & R found it reasonable under the totality of circumstances known to the agents. The agents had information from another officer that he had seen a package launched from Mexico over the border fence.  According to the R & R, the agents were aware of previous instances where these packages had been found to contain controlled substances. Within minutes of the launch, Agent Rodriguez relayed information that an individual carrying a package had entered the driveway of a home. (RT1 at 133.) The agents found a cylindrical package within 20 feet of where they first had contact with Defendant. The agents did not see any other people in the area where the package had landed.  Thus, the agents had reasonable suspicion to detain Defendant. *See Terry v. Ohio*, 392 U.S. 1, 21 (1968) (police must "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion").  The detention prior to arrest lasted approximately 15 minutes. (RT1 at 61.)

Defendant also argued that there was no probable cause for his arrest, but the Magistrate Judge disagreed.  "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). The R & R notes that the Court viewed the video surveillance upon which the agents relied and examined the exhibits submitted at the hearing.  (Doc. 44 & Ex. 220).  As to the video, the Magistrate Judge found:

---

[2] Defendant does not object to this ruling.

> Although the portion of the video depicting the individual's clothing is extremely brief, if viewed frame by frame, a person carrying a package can be seen wearing the same color shirt, pants and shoes as that worn by Defendant when he was stopped. An earlier portion of video depicts individuals in Mexico launching an object into the United States. (Ex. 220).

The R & R finds that before the arrest, the agents knew the information the Court determined was sufficient to establish reasonable suspicion. The agents also learned that Defendant was wearing the same color clothing as the individual Agent Rodriguez had seen carrying a package in the target area, and Defendant's innocent explanation for his presence at the location near the package of suspected marijuana was false.

In the supplemental memorandum, Defendant argued that he was under arrest at the point he was placed in handcuffs, but the Magistrate Judge disagreed. The use of handcuffs, "if reasonably necessary," does not automatically transform a detention into an arrest. *See United States v. Taylor*, 716 F.2d 701, 709 (9th Cir. 1983). Agent Price testified that he frisked Defendant and told him that he was going to be placed in handcuffs and detained while he completed the investigation and that he placed Defendant in handcuffs for his safety because "he was being temporarily detained for possible narcotics smuggling." (RT1 at 85, 112.) Agent Price testified that it was only after he had verified with the camera operator and his supervisor that he had everything correct, including the clothing description, that he placed Defendant under arrest. (RT1 83-84, 132.)

### B. Objections and Discussion

In his objections, Defendant disagrees with the Magistrate Judge's finding that the Agents did not violate the Fourth Amendment prohibition against unreasonable seizures. First, he objects to the finding that "[t]he Agents initiated the conversation with Defendant when he was in a public place." He notes that the house in question is below street level and has an iron gate at the opening of a narrow, fenced corridor leading to the front door. (RT1 at 21-22; Exs. 200- 202, 205.) He contrasts Agent Connors' testimony with that of Agent Price. Agent Connor testified that when he approached the iron gate to the front corridor, Defendant was knocking on the front door. (RT1 at 44.) Agent

- 5 -

Connors stood at the open gate, wearing his uniform with a visible gun and badge, and announced himself to Defendant as a United States Border Patrol Agent. (RT1 at 31-32.) Defendant knocked on the front door a few more times and then Agent Connors directed Defendant to come to him and he complied. (RT1 at 31-32, 44). Agent Connors then directed the Defendant to sit on a stone wall outside the iron gate. (RT1 at 44).

On the other hand, Agent Price testified that Agent Connors notified him around 10:00 p.m. that he had someone in custody, so Agent Price went to Agent Connors' location. (RT1 at 80, 86.) When Agent Price walked up to the house, Agent Connors was standing inside the fenced area on the sidewalk with the Defendant in front of the windows and next to the front door. (RT1 at 80, 96, 100-102; Exs. 201 & 203.)  Agent Price testified that he was standing at the iron gate leading to the front corridor. (RT1 at 101-102.) There is a narrow corridor to the front door, the corridor is enclosed by a fence and only allows for one person to enter and exit through an iron gate. (Exs. 200- 203, 205.)

Defendant likens this corridor to a bus aisle-way and refers the Court to *United States v. Drayton*, 536 U.S. 429, 434-35 (2002), and *Florida v. Bostick*, 501 U. S. 429, 434-435 (2002), for the proposition that agents may ask questions of individuals ". . . provided they do not induce cooperation by coercive means." *Id.* at 201. Defendant maintains that both agents blocked his ability to exit.

Defendant also disagrees with the Magistrate Judge's finding that the stop was "reasonable under the totality of circumstances known to the agents." (R & R at 3.) Specifically, he disagrees that "[s]imilar launchers had been used previously to throw packages containing controlled substances over the border fence into the United States." (R & R at 1-2, 4, citing RT1 at 8-10, 22.) He further disagrees that the Agents ". . . were aware of previous instances where these packages had been found to contain controlled substances;" according to Agents Connors' testimony, Border Patrol had not previously confiscated any of the packages launched over the border and, so, did not know their contents. (RT1 at 23-24, 88-89.) Agent Price also agreed that he had not personally seen

an item launched over the fence but had seen video of the launching apparatus. (RT1 at 88.)

Defendant also relies on the Agents' disagreement as to where exactly the package was located when it was found. Connors claimed he saw the package between the small stone wall and the iron gate leading to the front corridor on the driveway, which Defendant concedes implies he would have seen the package or dropped it when accessing the front corridor to the house. (RT1 at 36.)  But Agent Price said the package was on the other side of a small wall within feet of the barbecue and disagreed that the package was in the driveway. (RT1 at 105, Ex. 203 & 207). Defendant argues that this location implies he might not have seen it. Therefore, Defendant concludes that the circumstances known to the agents did not warrant the intrusion.

The Court overrules Defendant's objections.[3] First, Agent Connor specifically testified that he stood at the open gate and called Defendant to come over to speak with him; Connor stated that due to safety concerns, he did not enter the corridor.  But even if he did enter the corridor and block Defendant's exit, the Magistrate Judge has found reasonable suspicion warranting an investigatory stop of Defendant, and, as discussed below, this Court finds no error as to that finding.  *Drayton* is not applicable because in that case the officers approached bus passengers at random to ask questions and to request their consent to searches; the Supreme Court held this was permissible and that under the particular circumstances the searches in question were voluntary.  Here, Defendant's detention was not random and the brief detention for further investigation was not a violation of the Fourth Amendment.

The Court agrees with Defendant that the record does not show that Border Patrol had previously found packages launched from across the border into the United States and containing controlled substances.  The testimony showed that Border Patrol had previously seen packages launched over the border but been unable to locate them.  But

---

[3] This Court reviewed the videotaped evidence and agrees with the Magistrate Judge's characterization of that evidence.  (*Infra* at 5.)

the Court finds this irrelevant to the questions of reasonable suspicion to detain Defendant or probable cause to arrest him. It is undisputed that the package was not brought through the nearby Nogales port-of-entry; rather, under cover of darkness, it was launched from Mexico across the international border fence and immediately retrieved by someone on the U.S. side.  Whether or not the Border Patrol had previously found controlled substances in packages launched across the border, the agents could reasonably infer that the package contained either controlled substances or other items that were being smuggled across the border and were thus related to illegal activity.

As to the location of the package when the agents arrived at the house, the Court finds that any discrepancy in the testimony is insufficient to warrant suppression of the evidence or dismissal of the charges.  One agent testified that it was located approximately at the iron gate leading to the house where Defendant was standing and the other testified that it was on the far side of a wall near a barbeque and the iron gate to the house where Defendant was standing.  Furthermore, the evidence to which Defendant does not object shows that Agent Rodriguez saw a package launched across the border near Escalada St. and immediately so notified Agents Connor and Price.  As these agents proceeded to the vicinity of Escalada St., Agent Rodriguez observed an individual pick up the package, proceed to Escalada St., and turn into the driveway of a house. Moreover, Agent Rodriguez could identify the specific driveway and he advised the agent of the driveway.  Connor proceeded to the house and observed Defendant; there were no other people on the street.  Both agents saw a package wrapped in tape or plastic near Defendant.  This constitutes reasonable suspicion.  The Court overrules Defendant's objections; the Court is satisfied there was reasonable suspicion for a brief investigatory detention and, ultimately, probable cause for the arrest.

**IV.  Motion to Dismiss/Suppress (Destruction of Evidence)**

**A.  R & R**

The R & R finds that on June 25, 2015, a bundle containing marijuana, that weighed 7.55 pounds, was seized, and Defendant was arrested.  On October 27, 2015,

1 Defendant asked to re-weigh the marijuana and view the packaging. But the bulk of the
2 marijuana and packaging had been destroyed. A core sample was saved and is available
3 to Defendant for retesting. The government did not provide the defense with advance
4 notice of its intent to destroy the marijuana.

5 In recommending denial of the Motion, the Magistrate Judge reasons that
6 Defendant did not argue or present evidence that the government acted with bad faith;
7 therefore, Defendant must establish that the government withheld materially exculpable
8 evidence. Defendant argues the marijuana and packaging was material to (1) challenging
9 the agents' beliefs that drugs were contained within the package, and (2) the applicable
10 sentencing guidelines. (Doc. 29 at 5.)  As to the first matter, the R & R finds that
11 Defendant possesses a photograph of the package as it looked the night it was seized,
12 which is sufficient to challenge the agents' beliefs about the package's contents.  Further,
13 the Magistrate Judge determined there was probable cause for arrest based on the totality
14 of the circumstances, including the agents' description of the package and the
15 corroborating photograph.

16 As to the second matter, the R & R notes that the gravamen of the harm claimed is
17 that Defendant now lacks the ability to determine the actual amount of marijuana
18 contained in the package. The R & R acknowledges that because the package was
19 launched from across the border, it likely contained considerably more packaging
20 material than a typical bundle in order to avoid exploding on impact.  The R & R
21 concludes that this is a valid point but it would be considered at sentencing, if Defendant
22 is convicted. *See U.S. Sentencing Guidelines Manual* § 2D1.1(c).  Therefore, the issue is
23 not currently ripe for adjudication.

24 **B.     Objections and Discussion**

25 Defendant objects to the conclusion that because a photograph exists of the
26 package on the night it was obtained, the marijuana and the packaging is not "material to
27 challenging the agents' belief that drugs were contained within the package." (R & R at
28 6.)  Defendant argues that a single photograph exists which shows only the outside of the

package; it does not show the package cut into, the marijuana, the size of the package, the type of material inside the package, the thickness of the package or the package in the location it was originally found.  This argument appears to relate to probable cause for the arrest.  But probable cause is determined by what the agents knew at the time of the arrest, not something that occurred later, such as destruction of the package.  And some of the matters to which Defendant points—such as the thickness of the packaging or type of material inside—would not have been known to the agents anyway at the time of arrest. Moreover, the Court has already found probable cause. The Court overrules this objection.

The Defendant also disagrees with the Magistrate Judge's finding that the amount of marijuana contained in the package "is a point to be considered at sentencing . . ." and ". . . is not ripe for adjudication." (R & R at 6.)  He asserts that the quantity of marijuana must be determined by a jury and is therefore ripe for a pretrial determination. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).  Drug quantity is a material fact in a criminal prosecution which "must be charged in the indictment, submitted to the jury, subject to the rules of evidence, and proved beyond a reasonable doubt." *Hunt* at 911-12

Defendant does not object to the Magistrate Judge's conclusion that Defendant must establish that the government withheld materially exculpable evidence.  Defendant now argues that the government possessed exculpatory evidence in the form of the packaging; specifically, that the weight of the packaging goes directly to the actual amount of marijuana to be found by the jury since it is subtracted from the total weight.  Defendant asserts that he cannot defend and contest the amount of marijuana because the agents did not weigh the marijuana.  The Magistrate Judge agreed that there was no way to determine the weight of the marijuana only and it would be unfair to allow the government to try to estimate the actual weight. (RT 12/21/15 at 65-66.)

Defendant cites cases holding that the government must prove drug quantity.  In *United States v. Hunt*, the Ninth Circuit Court of Appeals stated that "[w]e honor the intent of Congress and the requirements of due process by treating drug quantity and

1 type, which fix the maximum sentence for a conviction, as we would any other material
2 fact in a criminal prosecution: it must be charged in the indictment, submitted to the jury,
3 subject to the rules of evidence, and proved beyond a reasonable doubt." 656 F.3d 906,
4 911 (9th Cir. 2011) quoting *United States v. Buckland*, 289 F.3d 558, 568 (9th Cir.2002)
5 (en banc). But Defendant does not cite any authority suggesting that the weight of the
6 drugs without the wrapping is exculpatory evidence. Rather, the issue seems to raise
7 questions about the evidence that the government can use in its case—matters not
8 currently before the Court.

9 Defendant is correct that the R & R does not address defense counsel's argument
10 regarding the lack of fingerprints on the packaging, but this appears to be an oversight.
11 The argument was made at the hearing where the testimony showed that although the
12 evidence collection team attempted to take fingerprints off the packaging, "they weren't
13 able to see anything that would be helpful." Defendant argues that if the government
14 elicits testimony from any witness hypothesizing why they were unable to obtain any
15 fingerprints, such as the packaging surface, this would prejudice the defense because he
16 could not defend against it. A review of the hearing transcript shows that Magistrate
17 Judge Ferraro considered this matter. (RT2 at 66-68.) After no objection from the
18 government, he determined that the government's witnesses should not refer to the fact
19 that they tried to get fingerprints. (*Id.* at 68.) The Court agrees with that conclusion and
20 notes in this Order the modification to the R & R to reflect the ruling.

21 **V.     Motion to Disclose Personal File**

22 Defendant seeks an order compelling the government to disclose the personnel
23 files of its Border Patrol witnesses and the existence of any internal affairs investigation
24 of its witnesses. In response, the government acknowledged its duty under *United States*
25 *v. Henthorn*, 931 F.2d 29 (9th Cir. 1991), and stated that it has ordered a review of the
26 agent's personnel files, and its counsel will turn over any information that is "favorable to
27 the defendant and material to his case." The R & R finds that the government is
28 complying with its obligations and recommends this motion be denied without prejudice,

- 11 -

1   in the event a dispute arises over the production of such material.  Defendant does not
2   object to the ruling, and the Court finds no clear error.
3   **IT IS ORDERED:**
4   (1)   The Court overrules Defendant's objections and denies his Motion to
5   Dismiss/Suppress (Doc. 20), Motion to Dismiss/Suppress (Doc. 29) and denies without
6   prejudice his Motion to Disclose Agents' Personnel File (Doc. 21).
7   (2)   The Court adopts the R & R with the modification that the government's
8   witnesses should not refer to the fact that they tried to get fingerprints from the
9   packaging.
10  (3)   The Jury Trial set for June 1, 2016 at 9:30 a.m. before Judge Cindy K.
11  Jorgenson and the plea deadline of May 13, 2016 are confirmed.
12  Dated this 25th day of April, 2016.

Cindy K. Jorgenson
United States District Judge